## STATE *v.* RAPPAPORT

[No. 58, October Term, 1956.]

*Decided January 8, 1957.*

524

The cause was argued before Brune, C. J., and Collins, Henderson, Hammond and Prescott, JJ.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *C. Orman Manahan, State's Attorney for Howard County,* on the brief, for the appellant.

*Charles E. Hogg,* with whom were *Albert L. Sklar, Theodore S. Miller* and *Sklar, Blacker & Sullivan* on the brief, for the appellee.

Prescott, J., delivered the opinion of the Court.

The appellee was indicted by the Grand Jury in Howard County on the charge of feloniously voting in the Primary and General Elections held in this State from the year 1946 until 1952, when he had been convicted of the crime of grand larceny in the first degree, a felony, in the County of New York in the State of New York, and for which he had received no pardon.

A motion to dismiss the indictment was filed. After preparing and filing a comprehensive and able opinion, Judge Macgill granted this motion, and the State appeals from the order of dismissal.

The appellee, Max A. Rappaport, was indicted in the Court of General Sessions, County of New York, in the State of New York on nine separate counts and on November 9, 1944, he entered a plea of "guilty" to the crime of grand larceny in the first degree, which was the first count in the indictment. On March 15, 1945, the docket entry shows that: "Upon the aforesaid plea of guilty, the Honorable John A. Mullen, Judge of this Court, suspended sentence upon the said Max Rappaport and placed him on probation, and ordered

restitution to be made in the sum of $15,000.00 in amounts fixed by the Probation Department of this Court".

The appellee subsequently came to Maryland and voted on seven occasions, from the year 1946 to the year 1952, in the elections held in this State. He was indicted by the Grand Jury of Howard County as above noted, the indictment containing seven counts. Each count charged him with feloniously voting in either a Primary or General Election held in this State from the years 1946 to 1952.

The determinative question of this appeal is, what is the signification of the word "convicted".

Art. I, Sec. 2 of the Constitution of Maryland reads, in part, as follows:

> "No person above the age of twenty-one years *convicted* of larceny or other infamous crime, unless pardoned by the Governor, shall ever thereafter, be entitled to vote at any election in this State; * * *." (Emphasis supplied).

Sec. 193 of Art. 33 of the Code (1951) states:

> "If any person who shall have been *convicted* of bribery, felony or other infamous crime, under the laws of this or any other state, and who has never received pardon for such offense * * * shall thereafter vote or offer to vote at any general, special or primary election in this State, he shall, upon conviction thereof be adjudged guilty of a felony, * * *." (Emphasis supplied).

From what has been said above, it readily is seen if what occurred in the Court of General Sessions in New York did not constitute a "conviction", the Court's ruling in granting the motion to dismiss was correct. The highest Court of the State of New York had occasion to consider this question nearly a half a century ago. In the leading case of *People v. Fabian,* 192 N. Y. 443, 85 N. E. 672, Fabian was indicted for knowingly voting at an election when he was not qualified. The alleged disqualification was based on the fact that the voter previously had been indicted for burglary, and upon his

trial therefor a verdict of guilty had been rendered against him, although no judgment was ever entered upon the verdict; sentence having been suspended. The pertinent provision of the New York Constitution (Art. 2, Sec. 2) and the law of New York relative to the offense charged (Laws 1901, p. 1669, c. 654, par. 2, subd. 10) in their end result were the same as the above quoted sections of the Maryland Constitution and Maryland law. That is, they required a previous "conviction" of a crime of a named magnitude. Fabian demurred to the indictment on the specific ground that a voter had not been "convicted" within the meaning of the Constitution and disqualifying statute unless the verdict against him had been followed by a judgment. It was his contention that the "conviction" necessary to work a disqualification was not simply a verdict of conviction but that it must have been a judgment of conviction. The Court in a very thorough and careful opinion pointed out the analogy between the laws that disqualified witnesses from testifying because of the previous conviction of crime, and those that prevented voting for the same reason. The Court stated, under the common law, witnesses who had been convicted of infamous crimes were denied the privilege of testifying; but, were not deemed to have been so convicted unless the record established the rendition of a judgment upon the verdict. It referred to *Greenleaf on Evidence,* par. 375, and stated it was the judgment, and that only, which was received as the legal and conclusive evidence of the party's guilt for the purpose of rendering him incompetent to testify. The Court then reasoned it did not seem proper to authorize the disfranchisement of a voter simply because a verdict had been found against him, and yet require proof that the verdict had been followed by a judgment in order to effect the disqualification of a witness. It then pointed out there had been somewhat similar holdings in cases in Illinois and Massachusetts; and, in finally sustaining the demurrer said: "For the reasons which have been given * * * the duty to disfranchise a person convicted of bribery or any infamous crime * * * authorizes such disfranchisement only upon a *conviction* in the more comprehensive sense of that term—that is to say, upon a *judgment* based

on a *verdict* of guilty — and that a person is not *convicted,* within the meaning of the Constitution or the statutes enacted in pursuance thereof, against whom sentence has been suspended after verdict." (Italics supplied).

The Court in the above case as well as others throughout the United States, some cited below, laid great stress upon the following passage of Justice Gray's opinion: "When, indeed, the word 'conviction' is used to describe the effect of the guilt of the accused as judicially proved in one case, when pleaded or given in evidence in another, it is sometimes used in a more comprehensive sense, including the judgment of the Court upon the verdict or confession of guilt; as, for instance, in speaking of the plea of *autrefois convict,* or of the effect of guilt, as judicially ascertained, as a disqualification of the convict". *Commonwealth v. Lockwood,* 109 Mass. 323.

A similar conclusion was reached in the case of *Truchon v. Toomey* (Cal. App. 2d), 254 P. 2d 638. The petitioner requested a writ of mandate to compel his registry as a voter which had been refused because he theretofore had pleaded guilty to a charge of assault with intent to rape and had been placed on probation. The Court ruled the writ should issue, and said: "The word 'conviction' obviously has two meanings, one narrow and the other broad * * *. The provision in * * * our Constitution restricting the pardoning power of the Governor to 'after conviction' * * * must be interpreted in its narrowest sense. * * * On the other hand, when considering the impositions of penalties and disabilities, particularly such a serious disability as that of disfranchisement, it is important that such imposition be made only when the proceeding causing it to be imposed is finally completed." The Court, therefore, held that, for the imposition of the disability of disfranchisement, the word "convicted" must be interpreted in its broad sense of verdict, or pleading, of guilty, followed by judgment and sentence. See to like effect, *Prewitt v. Wilson* (Ky.), 46 S. W. 2d 90; *29 C. J. S., Elections,* Sec. 33b; *18 Am. Jur., Elections,* Sec. 80; *State v. Houston* (N. C.), 9 S. E. 699.

It was noted above that in the *Fabian* case the Court pointed out the analogy between the laws that denied the right to

testify, and the ones that denied the right to vote, both after the conviction of crime. In the following cases, involving disqualification from testifying, similar rulings to those above were made in regard to the meaning of the word "conviction". *State v. Spurr* (W. Va.), 130 S. E. 81; *Burnett v. State* (Tex. Cr. App.), 201 S. W. 409; *Commonwealth v. Billingsley* (Pa.), 54 A. 2d 705.

The State contends that *People v. Fabian, supra,* has no effect in this case because, unlike the *Fabian* case, the appellee herein was placed on probation and ordered to pay $15,000 in amounts fixed by the Probation Department. The State maintains this latter amounts to a judgment. In the case of *Korematsu v. United States,* 319 U. S. 432, Korematsu was found guilty by the District Court of remaining in a city in California in violation of 18 U. S. C. par. 97 (a) and the orders issued thereunder. That Court ordered that he "be placed on probation for the period of five (5) years, the terms and conditions of the probation to be stated to said defendant by the Probation Officer of this Court. Further ordered that the bond heretofore given for the appearance of the defendant be exonerated. Ordered pronouncing of judgment suspended". The question involved was whether, after a finding of guilt in a criminal proceeding, and the sentence was suspended and defendant placed on probation, the judgment was final in nature and would support an appeal. The Supreme Court held that a probation order was an authorized mode of mild and ambulatory punishment intended as a reforming discipline, and that the order was final and appealable.

However, we think the question of his previous "conviction" should be controlled by the law of New York, the state where it is alleged to have occurred. And in holding the facts in this case do not justify a finding of a previous "conviction" we quote once more from the *Fabian* case, "where disabilities, disqualifications, and forfeitures are to follow upon a conviction, in the eye of the law, it is that condition which is evidenced by sentence and judgment, and that where sentence is suspended, and so the direct consequences of fine and imprisonment are suspended or postponed temporarily or indefinitely, so, also, the indirect consequences are likewise post-

poned". And while we have been referred to no case in this Court directly in point, this holding seems to be in harmony with the cases of *Fleet v. State,* 73 Md. unreported, 21 A. 367, and *Symington III v. State,* 133 Md. 452, 454. In the first case, this Court held that after a finding of guilt in a criminal case and no sentence was imposed, there was no final judgment upon which to base an appeal; and in the second, this Court held, that after a finding of guilt in a criminal case and there was a suspension of sentence, this amounted to a suspension of judgment, so there was no final judgment upon which an appeal could be based.

The conclusion announced above makes it unnecessary to pass on any other question presented, including the alleged invalidity of the statute.

*Order affirmed, with costs.*