## DARYL RENARD STEVENS *v.* STATE OF MARYLAND

[No. 331, September Term, 1976.]

*Decided December 8, 1976.*

The cause was argued before GILBERT, C. J., and MOYLAN and MELVIN, JJ.

*Sanford Z. Berman,* with whom were *Pickett, Houlon & Berman* on the brief, for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Lawrence Beck, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

Pivotal in this case is the difference between collateral estoppel and double jeopardy. The appellant, Daryl Renard Stevens, was convicted in the Circuit Court for Montgomery County by Judge H. Ralph Miller, sitting without a jury, of breaking and entering in contravention of Article 27, § 31A. Although framed in terms of the legal sufficiency of the evidence, the motions and argument actually made by the appellant at the end of the trial, as well as the argument before us both orally and in his brief, make it clear that the collateral estoppel question is the crucial issue herein.

The initial offense from which all of the charges against the appellant originally sprang was the burglary of Apartment 13, 1702 Mt. Pisgah Lane, in Silver Spring, Maryland, at some time between March 2 and March 7, 1974. A large amount of household goods and furnishings was stolen in the course of that burglary.

On April 24, 1974, and again on May 4, 1974 (the first search being at least seven weeks after the latest possible date for the burglary), two searches of the dormitory room of the appellant on the campus of the University of Maryland revealed 28 of the items taken in the burglary. There was no evidence directly linking the appellant to the breaking and entering. The State relied for its proof upon the permitted inference of fact from the established possession of recently stolen goods that the possessor was the thief thereof. *Anglin v. State*, 244 Md. 652, 656-657. It follows ineluctably that if the evidence as to the corpus delicti establishes that the larceny occurred in the course of a burglary, the permitted inference is that the possessor of the recently stolen goods was the burglar as well as the thief. If a straight question of legal sufficiency were before us, we would have no difficulty whatsoever in affirming this conviction. The procedural history of the case is, however, a far more tangled one.

As a direct result of the May 4 search, the appellant was arrested on May 8 on an arrest warrant issued out of the District Court of Maryland for the Fourth District (Prince

George's County) and charged with receiving stolen goods. The appellant came to trial in that court on June 13, 1974. As a result of preliminary plea bargaining, the State amended the receiving stolen goods charge so that the value of the stolen property was under $100. The appellant initially had entered a plea of guilty but the plea was subsequently changed to "not guilty." The appellant offered no evidence and acquiesced in an agreed statement of facts recited by the State. The agreed statement read as follows:

> "State: As to the receiving count your Honor, the State would represent to the Court that on or about .the 4th day of May, 1974 at 101 Denton Hall, University of Maryland, College Park, Maryland (proper names spelled as heard) in Prince George's County, that the defendant did receive knowingly and unlawfully — (can't understand) items of household goods and furnishings, statues, etc., articles of personal goods at the value of $99.00, that which is the property of Stanley Chatsky (as heard), knowing the same to be stolen or under circumstances should have known. As to the second count your Honor, enter a nolle pros.
>
> Judge: Is there any objection to the statement of facts given by the State?
>
> Counsel: No your Honor.
>
> Judge: Is there any other evidence on the issue of guilt?
>
> Counsel: No your Honor."

The judge then said to the appellant that "the court is convinced of your guilt beyond a reasonable doubt." The judge went on to say:

> "The Court will accept the recommendation of the State Mr. Stevens, therefore, we will enter a finding of probation before verdict, place you on 12 months unsupervised probation. Any difficulties in the 12 months Mr. Stevens and you're brought back and I — find you guilty. Do you understand what I'm saying?"

In the meantime, the processes of the law were moving forward in Montgomery County to bring the appellant before the bar of justice for common law burglary and related offenses. These charges arose out of the same evidence that was the gravamen of the receiving stolen goods charge in Prince George's County. On June 5, 1974, the Grand Jury for Montgomery County returned an eight-count indictment against the appellant, charging in its various counts:

(1) common law burglary,

(2) statutory nighttime housebreaking,

(3) statutory daytime housebreaking,

(4) breaking and entering the dwelling house of another (the only remaining charge before us in this case),

(5) grand larceny,

(6) petty larceny,

(7) receiving stolen goods at the grand larceny level and

(8) receiving stolen goods at the petty larceny level.

The appellant filed a Motion to Dismiss the Montgomery County indictment upon the grounds of double jeopardy, collateral estoppel and res judicata. The Motion to Dismiss was denied and, pursuant to *Neal v. State*, 272 Md. 323, the appellant noted an immediate appeal. In *Stevens v. State*, 27 Md. App. 460, Judge Lowe reasoned for this Court that jeopardy had attached at the hearing in the District Court for Prince George's County and that the right against double jeopardy would therefore bar the Montgomery County prosecution on the two counts charging greater and lesser receiving stolen goods and, for related reasons, on the two counts charging grand and petty larceny. He there said, at 466-467:

"Consequently, appellant's Motion to Dismiss the Indictment should have been granted as to the Seventh and Eighth Counts of the Montgomery County Indictment for receiving the same stolen

goods for which he had been once placed in jeopardy in Prince George's County. It follows logically that the Fifth and Sixth Counts charging larceny of the same items should also have been dismissed since one may not be convicted of stealing that which he has been determined to have received. *Bell v. State*, 220 Md. 75; *Heinze v. State*, 184 Md. 613, 617."

He went on to hold, however, that the other counts charging, respectively, common law burglary, statutory nighttime housebreaking, statutory daytime housebreaking and breaking and entering would not be barred on direct double jeopardy grounds because "[e]ach of these crimes has elements different from and/or in addition to the crime of receiving stolen goods for which appellant is serving his probationary period." *Stevens v. State*, at 467.

Subsequent to that holding by this Court, the appellant proceeded to trial in Montgomery County upon the four remaining charges. At the conclusion of the State's case, the prosecuting attorney, possessing only an inference and therefore no evidence of the element of "nighttime", entered a nolle pros to the charges of common law burglary and statutory nighttime housebreaking. The trial court in turn, as fact finder, found the appellant not guilty of statutory daytime housebreaking. The guilty verdict was on the only remaining charge, that of breaking and entering the dwelling house of another.

It is, of course, the law of this case under *Stevens v. State*, *supra*, that that conviction is not barred by any direct consideration of double jeopardy. It remains to be considered whether that conviction, upon the evidence presented, should have been barred by collateral estoppel under *Ashe v. Swenson*, 397 U. S. 436. The critical determination in this regard is whether there was or was not an issue of ultimate fact as to whether the appellant was a receiver of stolen goods, *which fact was once determined by a valid and final judgment.* If there has been such a valid and final judgment of fact, then we should hold that the present conviction is barred by collateral estoppel. To have been a receiver of

stolen goods would, *ipso facto,* negate the appellant's having been the thief of such goods. Under the evidence of this case involving the double-barrelled inference, the appellant could not be found to have broken and entered the house without first having been found to have been the thief. This conclusion is not a matter of law but rather an unavoidable operation of logic based upon the only available evidence. The inference that the appellant was the thief arising from the possession of recently stolen goods would be the indispensable middle term in the State's "legal sufficiency" syllogism in this particular case. The only evidence that the appellant broke and entered the house is based upon the fact that the burglar and the thief were one and the same man. To infer the breaking, therefore, it is first necessary to infer the theft. A valid and final judgment of ultimate fact to the effect that the appellant was a mere receiver and, therefore, of necessity not the thief would defeat the syllogism.

The peculiar nature of probation before verdict, however, establishes that there was no such valid and final judgment of ultimate fact. The law of *Ashe v. Swenson, supra,* is to the effect that:

> " 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that *when an issue of ultimate fact has once been determined by a valid and final judgment,* that issue cannot again be litigated between the same parties in any future lawsuit." 397 U. S. at 443. (Emphasis supplied)

Double jeopardy protects an individual against being placed again in peril on the same charges absent waiver or manifest necessity; collateral estoppel, by contrast, protects an individual against being placed in new peril on different charges after an ultimate and unquestioned fact finding on an earlier charge which would of necessity negate guilt at the subsequent trial of a factually related though legally distinct charge.

The question before us is whether the probation without

verdict on the charge of receiving, absent the actual verdict on the charge of receiving, constitutes "an issue of ultimate fact [having] once been determined by a valid and final judgment" within the contemplation of *Ashe v. Swenson.* The ultimate fact is, of course, that the appellant is the receiver and, therefore, not the thief.

The state of the law on the subject of probation without verdict at the time of the appellant's appearance before the District Court in Prince George's County [1] was clearly that there was no valid and final factual judgment. For that reason, no fine or other penalty could be imposed upon such a probationer. *Commissioner of Motor Vehicles v. Lee,* 254 Md. 279; *Skinker v. State,* 239 Md. 234. Indeed, the appellant's entire argument in this case is predicated upon the contention that he has been determined to have been a receiver of stolen goods. As the Court of Appeals made clear in *State v. Jacob,* 234 Md. 452, the nature and purpose of probation before verdict is the very antithesis of such a determination, saying at 455:

> "[P]robation without verdict, if granted, avoids any finding of guilt. Indeed, one of its primary purposes, where its use is deemed appropriate, is to avoid placing the stigma of a conviction on the accused."

In *Bartlett v. State,* 15 Md. App. 234, Judge Powers thoroughly analyzed the nature of probation without verdict and held squarely that where the probation is ultimately revoked, the case reverts to its pre-probationary status, which in terms of ultimate factual determinations is zero. He there said, at 241:

> "Should the probation thus granted be revoked at a subsequent hearing for that purpose, the case reverts to its status at the time the probation was granted, and determination of guilt, by plea or

---

1. Chapter 527 of the Acts of 1975 drastically rewrote the law of probation without verdict, obviating the trial de novo upon a revocation of probation and, therefore, supplying some finality to the original fact finding. The new law is not applicable to the present case.

trial, must follow before any sentence may be imposed."

In *State v. Bartlett*, 267 Md. 530, the Court of Appeals adopted the opinion of this court in *Bartlett v. State, supra.* *Bartlett* dealt with an instance where a guilty plea had initially been offered by the ultimate probationer without verdict. In *Duppins v. State*, 17 Md. App. 464, we dealt with the analogue of a consistent plea of not guilty and reaffirmed that there was no binding judgment capable of having any residual effect. We there said, at 467:

> "If the granting of probation without verdict aborts a trial where there has been a guilty plea filed there would seem to be more reason that a trial should be aborted where the accused has never admitted guilt. In either case the court has found no verdict. If a new trial is required in one case, more cogent reasons require a new trial in the other case."

Building upon that law, Judge Lowe, in the *Stevens* case, contrasted the jeopardy which attaches at the beginning of a hearing with the collateral estoppel that arises only upon final judgment. In affirming the pretrial decision of the Montgomery County Court in not dismissing the breaking and entering charges, he said at 27 Md. App. 463-464:

> "His reasoning would have been appropriate to considerations of the evidentiary rules of collateral estoppel and res judicata since these principles are both conditioned upon an issue of ultimate fact having been once determined by a valid and final judgment. *Ashe v. Swenson*, 397 U. S. 436."

Upon that reasoning, we conclude that collateral estoppel will not bar the conviction here. The collateral facts upon which the estoppel is predicated were never finally established.[2]

---

2. As to whether a negotiated verdict rather than a true fact finding should ever form the basis for collateral estoppel, consider the mischief that might be done by a truly clever criminal. Posit a quick and successful plea of guilty to receiving stolen goods and contemplate the possible effect upon

The appellant's second contention is that the trial judge was acting beyond his authority in imposing restitution in this case as a condition of probation. The governing authority is Article 27, § 641A, which provides, *inter alia:*

> "Upon entering a judgment of conviction, the court having jurisdiction, may suspend the imposition or execution of sentence and place the defendant on probation upon such terms and conditions as the courts deem proper. . . ."

We see nothing inappropriate in restitution being made a condition of probation under the circumstances of this case.

> *Judgment affirmed; costs to be paid by appellant.*

---

an ultimate trial for burglary, armed robbery, and even murder premised upon the intermediate inference that the possessor of the recently stolen goods was the thief.